UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KERR CARRINGTON,
       Petitioner,


       v.                                    CIVIL ACTION NO.
                                             13-12393-IT

MICHAEL A. THOMPSON,
       Respondent.

**REPORT AND RECOMMENDATION RE:**
**RESPONDENT'S MOTION TO DISMISS**
**(DOCKET ENTRY # 16)**

**August 22, 2014**

**BOWLER, U.S.M.J.**

     Respondent Michael A. Thompson ("respondent"),
superintendent of the Massachusetts Correctional Institute in
Concord, Massachusetts ("MCI-Concord"), moves to dismiss a writ
of habeas corpus filed by petitioner Kerr Carrington
("petitioner"), an inmate at MCI-Concord, under 28 U.S.C. § 2254
("section 2254").  (Docket Entry # 15).  Petitioner attacks his
April 5, 2011 conviction for larceny, attempted larceny and
uttering rendered in Massachusetts Superior Court (Suffolk
County) ("the trial court").  Respondent submits that all three
grounds raised in the petition present only state law claims.  As
to two of the three grounds, respondent additionally argues that
they do not set out violations of federal constitutional law.

     The grounds for relief in the pro se petition concern a six
and a half month delay in the receipt of trial transcripts.  The

petition alleges that the Commonwealth violated an administrative order issued by the Chief Justice for Administration and Management of the Trial Court.  The order establishes "time standards for the production of trial transcripts in civil and criminal cases . . . pursuant to the superintendence power of the Chief Justice for Administration and Management under G.L. c. 211B, § 9."  (Docket Entry # 16-4).  Specifically, it states that, "Within one hundred and twenty (120) days of the receipt of an order for a transcript, . . . the court reporter shall deliver the transcript . . . to the clerk."  (Docket Entry # 16-5).

The petition sets out the following three grounds:  (1) "Given the effect of the recently enacted administrative order, the unlawful delay in the production of the trial transcripts breached [petitioner's] constitutional rights under Article 11 of the Massachusetts Declaration of Rights"; (2) "Given the breach of law caused by the inordinate delay, in contrast to the ordinary due process analysis, [petitioner] was not required to demonstrate prejudice"; and (3) "Due to incompetence, petitioner can meet the prejudice prongs required by the courts (if needed)."  (Docket Entry # 1).

There is no indication that petitioner seeks an evidentiary hearing.  Even if he did, a hearing is not warranted.  Before allowing an evidentiary hearing, a federal "habeas judge 'must first consider whether such hearing could enable an applicant to

prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012) (quoting Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)). The petitioner "must therefore demonstrate that his allegations would entitle him to relief and that the hearing is *likely* to elicit the factual support for those allegations." Id. (emphasis added).

Petitioner fails to articulate or posit facts that the record does not include and that, if elicited at an evidentiary hearing, would provide support for one or more grounds in the petition. It is also inappropriate to conduct an evidentiary hearing and consider new facts not before the state courts when conducting a section 2254(d)(1) analysis. See Garuti v. Roden, 733 F.3d 18, 22 (1st Cir. 2013) ("'review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits'") (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)).

PROCEDURAL BACKGROUND

On December 11, 2011, a Suffolk County grand jury returned 41 indictments charging petitioner with committing larceny over $250, uttering false documents, attempting to commit larceny, identify fraud and uttering a counterfeit note. (Docket Entry # 16-3, pp. 8, 23-24). Trial commenced in March 2011. During the trial, the Commonwealth presented evidence that petitioner

"engaged in multiple incidents in which he acquired, or attempted
to acquire, expensive electronic equipment (typically high-end
cameras) from various vendors without payment." Commonwealth v.
Carrington, 2013 WL 6164468, at *1 (Mass.App.Ct. Nov. 25, 2013).[1]
Petitioner relied on forged checks, purchase orders and false
identities to institute the schemes. Commonwealth v. Carrington,
2013 WL 6164468, at *1.

On April 5, 2013, the jury found him guilty of 13 counts of
larceny over $250, nine counts of attempted larceny and 13 counts
of uttering. On April 15, 2011, petitioner filed a timely notice
of appeal. On May 5, 2011, he ordered the trial transcripts. On
May 24, 2011, the Clerk notified the two court reporters.[2] The
first reporter completed her transcripts on November 7, 2011.
The second reporter completed the remaining transcripts on
November 14, 2011. On December 12, 2011, the trial court
notified the parties and the Massachusetts Appeals Court ("the
appeals court") of the completion of the record.

Because the 120 day time period in the administrative order
ran on or about September 21, 2011, petitioner filed a motion to
dismiss the charges and vacate the convictions on September 26,

---

[1]  A "state court's factual findings" are presumed correct
when considering a "state conviction on habeas review." Hensley
v. Roden, 2014 WL 2791868, at *1 (1st Cir. June 20, 2014); 28
U.S.C. § 2254(e)(1).

[2]  The state court record does not include the date that the
court reporters received the request.

4

2011.  As set out in the supporting memorandum, petitioner sought
dismissal "on state-law grounds" because more than "120 days have
passed since the transcripts were ordered" in violation of the
administrative order.  (Docket Entry # 16-4).  Alternatively,
petitioner argued that the "inordinate delay" compromised his
"Due Process right to a timely appeal."  (Docket Entry # 16-4).
On September 30, 2011, the trial court denied the motion.

Petitioner appealed the denial to the appeals court.  On
appeal, he argued that producing the transcripts more than 120
days after receipt violated the administrative order.  This
"unlawful delay" therefore violated petitioner's constitutional
rights under Article 11 of the Massachusetts Declaration of
Rights.  In the alternative, petitioner argued that the failure
to produce the transcripts within the 120 day time "breached
[petitioner's] due process rights under the Fourteenth
Amendment."  (Docket Entry # 16-6).  On September 26, 2012, the
appeals court affirmed the trial court's denial of the motion to
dismiss.  Commonwealth v. Carrington, 2012 WL 4370128, *1
(Mass.App.Ct. Sept. 26, 2012).

In October 2012, petitioner filed an application for leave
to obtain further appellate review ("ALOFAR") with the
Massachusetts Supreme Judicial Court ("SJC").  The ALOFAR
identifies two issues for appellate review.  The first issue
parrots ground one in this petition.  It alleges that, "Given the

effect of the recently enacted administrative order, the unlawful delay in the production of the trial transcripts breached [petitioner's] Constitutional rights under Article 11 of the Massachusetts Declaration of Rights, warranting a dismissal of the case."  (Docket Entry # 12-4).  The second issue is identical to ground two in this petition.  On November 2, 2012, the SJC summarily denied the ALOFAR.  (Docket Entry # 16-7).

Petitioner filed this petition less than one year later on September 16, 2013.[3]  Meanwhile, on November 25, 2013, the appeals court denied a direct appeal of the convictions.  Two days later, the trial court denied a motion for a new trial petitioner filed earlier in November 2013.

DISCUSSION

I.  <u>Ground One</u>

Respondent submits that ground one raises only a state law claim.  It is well settled that section 2254(a) jurisdictionally limits federal habeas relief to state convictions "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see</u> 28 U.S.C. § 2241(c); <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief does not lie for errors of state law"'"); <u>Brown v. O'Brien</u>, 666 F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law are

---

[3]  September 16, 2013, is the date petitioner deposited the petition in the mailing system at MCI-Concord.

not the basis for federal habeas relief"). Errors of state law that do not rise to the level of a constitutional error "may not be corrected on federal habeas." <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-349 (1993) (O'Connor, J. concurring); <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990) ("availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"); <u>accord</u> <u>Sanna v. DiPaolo</u>, 265 F.3d 1, 12-13 (1st Cir. 2001) (habeas review unavailable for state law error except "extreme cases" where state law or practice betrays "fundamental principle of justice" under the Due Process Clause).

In ground one, petitioner submits that the unlawful delay in producing the trial transcripts violated the administrative order which, in turn, breached his "constitutional rights under Article 11 of the Declaration of Rights."[4] (Docket Entry # 1). The ground for relief fails to allege any violation of federal constitutional law. Federal habeas review is therefore unavailable with respect to ground one. <u>See</u> <u>Mandeville v. Thompson</u>, 2014 WL 1338277, at *12 (D.Mass. March 31, 2014) (to the extent petitioner "raises a claim under the Massachusetts Declaration of Rights, federal courts are not authorized to issue writs of habeas corpus based upon errors of state law").

---

[4] Ground one tracks and quotes the language petitioner used in the ALOFAR to identify the first of two issues presented to the SJC.

II.  <u>Ground Two</u>

As to ground two, respondent likewise maintains that it presents only an issue of state law.  Alternatively, respondent asserts that the ground does not rise to the level of a violation of the Due Process Clause of the Fourteenth Amendment.

Addressing the state law argument, ground two alleges that the inordinate delay violated the administrative order and the violation, "in contrast to the ordinary due process analysis," obviates the need to show prejudice.  (Docket Entry # 1).  The petition also states that the delay in the production of the transcripts "constituted a violation of positive law" thus avoiding the need to show prejudice.  (Docket Entry # 1).  Similar to source of the language in ground one, the language in ground two tracks and quotes the language petitioner used in the ALOFAR to present the second issue to the SJC.  (Docket Entry # 12-4, pp. 3, 15).  The ALOFAR elaborates the issue as a violation of petitioner's "due process rights under the Fourteenth Amendment."  (Docket Entry # 12-4, p. 15).[5]  The corresponding issue in the appeals court brief identically argues a "breach of [petitioner's] Fourteenth Amendment due process rights."  (Docket Entry # 16-6, p. 14).  Although petitioner does not refer to the Fourteenth Amendment in ground two, he quotes the caption in the

_____

[5]  The page number refers to the docketed page as opposed to the page number in the ALOFAR.

ALOFAR that presents the federal constitutional issue. Affording
him a liberal construction of the petition in light of his pro se
status, ground two presents a federal constitutional claim. In
particular, it asserts that the violation of the administrative
order caused by the inordinate delay violated petitioner's due
process rights under the Fourteenth Amendment without the need to
show prejudice. Accordingly, this court turns to the merits.

Because the SJC summarily denied the ALOFAR, the decision by
the appeals court affirming the denial of the motion to dismiss
is the relevant decision. See <u>Foxworth v. St. Amand</u>, 570 F.3d
414, 425-426 (1st Cir. 2009) (examining "the rationale of the
intermediate appellate court where, as here, the state's highest
court has summarily denied further appellate review"). In a
memorandum and order, the appeals court summarized petitioner's
argument as an alleged violation of Article 11 of the
Massachusetts Declaration of Rights, i.e., ground one in the
current petition. The court denied relief because:

> "For due process rights to be implicated as a result of a
> delay in the appellate process, the defendant must
> demonstrate that the Commonwealth deliberately blocked his
> appellate rights or that he was significantly prejudiced by
> the delay." <u>Commonwealth v. Fisher</u>, 54 Mass.App.Ct. 41, 47
> (2002). Here, the defendant has not affirmatively satisfied
> either of these criteria. First, he has not presented any
> evidence that the district attorney's office intentionally
> or deliberately delayed the production of the transcripts.
> Second, the defendant has not demonstrated that he suffered
> any prejudice.

<u>Commonwealth v. Carrington</u>, 2012 WL 4370128, at *1. Notably, the

appeals court added that it denied relief "substantially" for the reasons set out in the Commonwealth's brief.  The Commonwealth's brief focused on petitioner's state constitutional rights.  It nevertheless noted that the Sixth Amendment guarantee of a speedy trial does not apply to an appeal and elsewhere stated that "an extreme case . . . of appellate delay might entrench on a defendant's due process rights under the Fourteenth Amendment." (Docket Entry # 22).

The applicable standard of review depends upon whether the appeals court rendered a decision on the merits of the federal due process claim.  28 U.S.C. § 2254(d); <u>see</u> <u>Lyons v. Brady</u>, 666 F.3d 51, 53-54 (1st Cir. 2012) ("standard of review of the SJC's decision depends on whether that court 'adjudicated on the merits' [Lyons's due process] claim"); <u>Pike v. Guarino</u>, 492 F.3d 61, 67 (1st Cir. 2007).  By its terms, section 2254(d) review only applies to adjudications by a state court "on the merits." 28 U.S.C. § 2254(d).  Consequently, when a state court decision "does not address the federal claim on the merits," a federal "habeas court reviews such a claim de novo."  <u>Junta v. Thompson</u>, 615 F.3d 67, 71 (1st Cir. 2010); <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 66 (1st Cir. 2009) (when "petitioner raises a federal claim during state proceedings that is not decided by the state court," court "reviews that claim de novo").

Section 2254(d) "'does not require a state court to give

reasons before its decision can be deemed to have been "adjudicated on the merits."'" Johnson v. Williams, 133 S.Ct. 1088, 1094 (2013). Hence, the appeals court's failure to address the federal constitutional claim explicitly does not inevitably lead to de novo review. As explained in Harrington, "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[6] Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011). Conversely, if a petitioner fails to "'fairly present'" a claim for purposes of exhaustion to "'each appropriate state court,'" then "the Richter presumption is fully rebutted." Johnson v. Williams, 133 S.Ct. at 1097.

In the case at bar, the trial court did not deny the motion to dismiss based on a procedural default. Petitioner also fairly presented the federal due process claim to the appeals court. (Docket Entry # 16-6). The appeals court denied relief substantially for the reasons in the Commonwealth's brief which,

---

[6] The Harrington Court cited Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991), as an example of a case overcoming the presumption. Harrington v. Richter, 131 S.Ct. at 785. Ylst involved interpreting an unexplained order in the context of the procedural default rule. Ylst v. Nunnemaker, 501 U.S. at 803. Under Ylst, a federal habeas court may presume that the unexplained order rests on a procedural default if the lower state court rested on a procedural default. Id.

in turn, addressed the federal due process claim.  Finding no

reason not to adhere to the <u>Richter</u> presumption, AEDPA[7] review

under section 2254(d)(1) applies.[8]

Section 2254(d)(1) establishes "two categories of cases in

which a state prisoner may obtain federal habeas relief with

---

[7]  AEDPA is an acronym for the Antiterrorism and Effective
Death Penalty Act of 1996 codified at 28 U.S.C. § 2254.

[8]  In the alternative and assuming that the appeals court
did not decide the merits of the federal claim, ground two fails
on de novo review.  Although an extreme delay in processing an
appeal may constitute a violation of due process and delays by
court reporters in producing a transcript "are attributable to
the government," there must also be a showing of prejudice.  <u>U.S.
v. DeLeon</u>, 444 F.3d 41, 56-57 (1st Cir. 2006).  The delay at
issue falls well short of an extreme delay and there was no
prejudice.  As to prejudice, there is no showing that the delay
impaired petitioner's ability to present his case to the appeals
court.  <u>See</u> <u>id.</u> at 57 (identifying the kinds of prejudice that
might apply vis-à-vis a delayed appeal).
    If the federal claim in ground two is an attempt to argue
that the violation of the state administrative order creates a
property interest to receive the transcripts in 120 days, <u>see
Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577
(1972); <u>URI Student Senate v. Town of Narragansett</u>, 631 F.3d 1, 9
(1st Cir. 2011) ("to show a deprivation of procedural due
process, a party must first show that the challenged action
implicates a constitutionally protected liberty or property
interest"), it also fails on the merits.  The stated purpose of
the administrative order is "to promote timeliness in the
resolution of civil and criminal cases by the appellate courts."
(Docket Entry # 16-5).  The fact that defendants such as
petitioner receive an indirect benefit by receiving transcripts
in a short period of time does not create a property interest.
<u>See</u> <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 767-768
(2005) (distinguishing between indirect and direct benefits).
Moreover, there was no denial of due process.  Petitioner had the
opportunity to be heard about the denial when he filed the motion
to dismiss and presented the claim to the trial court, the
appeals court and the SJC.  <u>See</u> <u>generally</u> <u>Perez-Acevedo v.
Rivero-Cubano</u>, 520 F.3d 26, 30 (1st Cir. 2008).

respect to a claim adjudicated on the merits in state court."[9]
Williams v. Taylor, 529 U.S. 362, 404 (2000).  Under the first
category, "a state court determination is 'contrary to' clearly
established law if the court 'applies a rule that contradicts the
governing law set forth' by the Supreme Court or 'confronts a set
of facts that are materially indistinguishable from a decision of
[the Supreme Court] and nevertheless arrives at a result
different from [its] precedent.'"  Gomes v. Brady, 564 F.3d 532,
537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156,
165-166 (2000) (decision is contrary to "clearly established
federal law if it applies a legal rule that contradicts" the
"prior holdings" of the Supreme Court or "reaches a different
result from" a Supreme Court case "despite confronting
indistinguishable facts").  Here, there is no indication that the
appeals court applied a rule that contradicts governing Supreme
Court case law with respect to the Due Process Clause.  Nor did
the appeals court reach a result different from a Supreme Court
case with indistinguishable facts.  The first category offers
petitioner no relief.

Under the second category, the federal court may grant the

---

[9]  Section 2254(d)(1) review expressly applies to the
"decision" of the state court rather than the state court's
reasoning.  See Ouber v. Guarino, 293 F.3d 19, 34 (1st Cir. 2002)
(focus of inquiry is on the appeals "court's ultimate conclusion
rather than on the strength of the court's announced rationale").

writ if the relevant state court decision "'involved an
unreasonable application of clearly established Federal law, as
determined by the Supreme Court of the United States.'"
Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with
ellipses omitted).  An unreasonable application of clearly
established federal law occurs if a state court decision
"correctly identifies the governing legal rule but applies that
rule unreasonably to the facts of a particular prisoner's case."
White v. Woodall, 134 S.Ct. 1697, 1706 (2014); Cullen v.
Pinholster, 131 S.Ct. at 1399.  In order to obtain federal habeas
relief, "'a state prisoner must show that the state court's
ruling on the claim being presented in federal court was so
lacking in justification that there was an error well understood
and comprehended in existing law beyond any possibility for
fairminded disagreement.'"  White v. Woodall, 134 S.Ct. at 1702
(quoting Harrington v. Richter, 131 S.Ct. at 786-787).[10]  Habeas
relief under section 2254(d)(1) is available "if, and only if, it
is so obvious that a clearly established rule applies to a given

_____

[10]  The Court in Woodall rejected the respondent's "notion
that a state-court '"determination may be set aside if, under
clearly established federal law, the state court was unreasonable
in refusing to extend the governing legal principle to a context
in which the principle should have controlled."'"  White v.
Woodall, 134 S.Ct. at 1705 (internal ellipses omitted).  In no
uncertain terms, the Court stated that, "To the extent the
unreasonable-refusal-to-extend rule differs from the one embraced
in Williams and reiterated many times since, we reject it."  Id.
at 1706.

set of facts that there could be no 'fairminded disagreement' on the question." Id. at 1706-1707.

"Clearly established Federal law . . includes only the holdings, as opposed to the dicta, of" Supreme Court decisions. White v. Woodall, 134 S.Ct. at 1702 (internal brackets and quotations marks omitted); Yeboah-Sefah v. Ficco, 556 F.3d at 65 (clearly established federal law refers to "'holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision'") (internal brackets omitted). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" Parker v. Matthews, 132 S.Ct. 2148, 2155 (2012), and "diverging approaches" to an issue in the courts of appeals may "illustrate the possibility of fairminded disagreement." White v. Woodall, 134 S.Ct. at 1703 n.3. "[F]actually similar cases from the lower federal courts may" nonetheless inform a determination particularly "when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002); see also Coningford v. Rhode Island, 640 F.3d 478, 485 (1st Cir. 2011) (noting that lower court decisions "may not be used to fill a gap where" Supreme Court has "expressly declined to lay down a rule").

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application

of such jurisprudence.  Williams v. Taylor, 529 U.S. at 411;

accord Wiggins v. Smith, 539 U.S. 510, 520-521 (2003) ("state

court's decision must have been more than incorrect or

erroneous").  Under the unreasonable application prong, the

"habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also

be unreasonable."  Williams v. Taylor, 529 U.S. at 411; accord

Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under

AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was

unreasonable--a substantially higher threshold").

     Turning to the relevant Supreme Court jurisprudence, "[I]t

is well settled that there is no constitutional right to an

appeal."  Abney v. United States, 431 U.S. 651, 656 (1977);

accord Martinez v. Court of Appeals of California, 528 U.S. 152,

160 (2000) ("Sixth Amendment does not include any right to

appeal"); Ross v. Moffitt, 417 U.S. 600, 611 (1974) ("it is clear

that the State need not provide any appeal at all").  Rather,

"the right of appeal is statutory, and the grant is subject to

due process requirements."  U.S. v. DeLeon, 444 F.3d 41, 58 (1st

Cir. 2006) (citing Evitts v. Lucey, 469 U.S. 387, 393 (1985)).

Thus, if a state creates "appellate courts as 'an integral part

of the system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. at 393 (quoting Griffin v. Illinois, 351 U.S. 12, 18 (1956)). In Massachusetts, criminal defendants "have a statutory right of appeal." Commonwealth v. Marinho, 981 N.E.2d 648, 661 (Mass. 2013); Mass. Gen. L. ch. 278, § 28.

Where, as here, a state provides a criminal appeal as of right, due process mandates that the appeal be "adequate and effective." Id. at 392 ("we have held that the Fourteenth Amendment guarantees a criminal appellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal 'adequate and effective'") (citing Griffin v. Illinois, 351 U.S. at 20). The Supreme Court in Griffin held that, when "a transcript of the trial court proceedings was a prerequisite to a decision on the merits of an appeal, . . . the State must provide such a transcript to indigent criminal appellants who could not afford to buy one if that was the only way to assure an 'adequate and effective' appeal." Evitts v. Lucey, 469 U.S. at 393 (stating holding in Griffin, 351 U.S. at 20). The Griffin Court was careful to note that, "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it" inasmuch as the state "may find other

17

means of affording adequate and effective appellate review to indigent defendants." Griffin v. Illinois, 351 U.S. at 20.

The due process guarantee of an adequate and effective appeal when a state provides an appeal as of right, see Evitts v. Lucey, 469 U.S. at 392-393, operates at a high level of generality.  Griffin applies to providing a free transcript as opposed to a delay in the appellate process.  Moreover, the Supreme Court has never held that an inordinate delay in processing an appeal caused by a tardy production of trial transcripts violates due process.  See Owens v. McLaughlin, 733 F.3d 320, 329 (11th Cir. 2013) ("Supreme Court has never held that there is a constitutional right to a speedy direct appeal in a state criminal case"); Reed v. Quarterman, 504 F.3d 465, 485 (5th Cir. 2007) ("there is no Supreme Court decision holding that excessive delay in a direct appeal is a violation of the Due Process Clause of the United States Constitution").[11]  The absence of a Supreme Court holding that the state must provide a speedy appeal or a holding that appellate court delay without a showing of prejudice violates due process, as urged in ground two and in the federal claim presented to the appeals court (Docket Entry # 16-6, pp. 13-14), renders it highly unlikely that the

_____

[11]  Here, the appeals court adopted the reasoning in the Commonwealth's brief which, in turn, states that the speedy trial guarantee under the Sixth Amendment "'does not apply to the appellate process.'"  (Docket Entry # 22).

appeals court unreasonably applied clearly established due process law. See generally Coningford v. Rhode Island, 640 F.3d at 485 ("absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads the petitioner's claim that the state court's admission of the prior bad acts evidence can be deemed an unreasonable application of the broader fair-trial principle").

Relying on the reasons in the Commonwealth's brief, the appeals court rejected the federal constitutional claim that the violation of the administrative order due to the failure to produce the trial transcripts within the requisite 120 day time period violated petitioner's due process rights under the Fourteenth Amendment. The delay caused by the failure to produce the transcripts spanned a period of approximately six months and it did not impair petitioner's ability to present his appeal. Fairminded disagreement undeniably exists with respect to whether a six or seven month delay without any showing of prejudice denied petitioner an adequate and effective appeal in violation of due process. In other words, it is not "so obvious that a clearly established rule applies to" this "given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 134 S.Ct. at 1706-1707.

A brief review of factually similar lower federal court decisions confirms this finding. See Rashad v. Walsh, 300 F.3d

at 35; see also Coningford v. Rhode Island, 640 F.3d at 485. It is true that decisions in two courts of appeals recognize that "due process can be denied by any substantial retardation of the appellate process, including an excessive delay in the furnishing of a transcription of testimony necessary for completion of an appellate record." Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir. 1980); see U.S. v. DeLeon, 444 F.3d at 56 (extreme delay in furnishing transcripts may violate due process and a showing of prejudice is required). To the extent Rheuark and DeLeon are factually similar to the case at bar, neither the two year delay in Rheuark, 628 F.3d at 302-303, nor the one year delay in DeLeon, 444 F.3d at 57, standing alone, violated due process. Both cases therefore evidence that the appeals court did not unreasonably apply clearly established Supreme Court precedent. In short, the premise that "factually similar cases from the lower federal courts may" inform a determination particularly "when the relevant Supreme Court rule is broad," Rashad v. Walsh, 300 F.3d at 35, does not lend any support to petitioner's position. Ground two does not warrant habeas relief.

III. Ground Three

Ground three raises an ineffective assistance of counsel claim. Petitioner submits that he can satisfy the prejudice prong of the due process claims in grounds one and two "due to [the] incompetence" of his counsel. (Docket Entry # 1). As

stated in the petition, counsel did not argue that the
Commonwealth "knew fully" that petitioner sought to secure the
transcripts and that the Commonwealth knew it "could have
assisted" petitioner in his efforts.  (Docket Entry # 1).
Counsel also neglected to point out that, "[T]he Commonwealth,
through its agents, sat idle."  (Docket Entry # 1).

Respondent moves to dismiss the ground because it raises
only a state law violation.  Alternatively, respondent argues
that the claim does not rise to the level of a federal
constitutional violation.

The ground does not identify either the Massachusetts or
federal ineffective assistance of counsel standard or refer to a
state or federal constitutional basis for the claim.  To the
extent it raises only a state law claim, the ground does not
entitle petitioner to habeas relief.  Alternatively and assuming
for purposes of argument only that it raises a Sixth Amendment
ineffective assistance of counsel claim, it fails on the merits
as explained below.

First, although not argued by respondent, petitioner did not
exhaust his state court remedies.  Exhaustion requires a
petitioner to "fairly present" the federal claim to the state's
highest court "thereby alerting that court to the federal nature
of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004).
Petitioner did not present the ineffective assistance of counsel

claim to the trial court, the appeals court or the SJC.  Section 2254(b)(2), however, allows a federal habeas court to deny a petition "on the merits, notwithstanding the failure" to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).

Turning to the merits and applying de novo review, an ineffective assistance of counsel claim requires the petitioner to "show that his attorney's performance was deficient, and that the deficient performance prejudiced his defense."  Ortiz-Graulau v. U.S., 2014 WL 2786759, at *3 (1st Cir. June 20, 2014); Strickland v. Washington, 466 U.S. 668, 687 (1984).  In the event a petitioner "falls short in showing either deficiency or prejudice, the claim fails."  Ortiz-Graulau v. U.S., 2014 WL 2786759, at *3.

Under the performance prong, the petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. at 687.  The standard is "'highly deferential'" and it requires the petitioner "to 'overcome the presumption that the challenged action might be considered sound trial strategy.'"  Pena v. Dickhaut, 736 F.3d 600, 605 (1st Cir. 2013) (quoting U.S. v. Rodriquez, 675 F.3d 48, 56 (1st Cir. 2012)); Strickland v. Washington, 466 U.S. at 689 (there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance"). Consequently, the ineffective assistance prong is satisfied "'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" <u>Pena v. Dickhaut</u>, 736 F.3d at 605 (quoting <u>U.S. v. Rodriguez</u>, 675 F.3d at 56). Reasonableness "includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" <u>Wiggins v. Smith</u>, 539 U.S. at 523.

Petitioner complains about counsel's failure to raise the argument that the Commonwealth knew that petitioner sought the transcripts and did not assist him in procuring them. Under Massachusetts law, a delay in processing an appeal implicates a defendant's due process rights if the defendant establishes "that the Commonwealth deliberately blocked his appellate rights or that he was significantly prejudiced by the delay." <u>Commonwealth v. Fisher</u>, 763 N.E.2d 1106, 1111 (Mass.App.Ct. 2002) (citing <u>Commonwealth v. Alvarez</u>, 661 N.E.2d 1293, 1304 (Mass. 1996)); <u>Commonwealth v. Santos</u>, 672 N.E.2d 562, 567 (Mass.App.Ct. 1996) ("defendant's due process rights may be implicated if it is shown that the Commonwealth has deliberately blocked the defendant's appellate rights or if the defendant has suffered 'inordinate and prejudicial delay' in exercising those rights"). In lieu of arguing deliberate or intentional conduct, counsel focused the argument on the prejudice requirement by maintaining that a

showing of prejudice was not required due to the violation of the administrative order.

To show deliberate conduct, there must be "evidence of intentional or deliberate moves by the Commonwealth calculated to interfere with his right to prosecute an appeal of his conviction." Commonwealth v. Santos, 672 N.E.2d at 567. "[B]ureaucratic inattention or ineptitude" is not sufficient. Id. In fact, the SJC in Campiti rejected an argument that inaction or a failure to assist, as asserted by petitioner, constitutes an intentional or deliberate interference with a defendant's appellate rights. See Campiti v. Commonwealth, 630 N.E.2d 596, 598 (Mass. 1994) (alleged conduct in support of defendant's argument that Commonwealth "repeatedly chose the course of total inaction and/or lack of assistance in moving this case along . . . hardly rises to the level of deliberately blocking the defendant's appellate rights"). Consequently, the inaction and failure to assist argument was a futile argument. Further, petitioner's counsel did not have any facts to support an argument that the Commonwealth engaged in deliberate or intentional conduct.

It is true that counsel has an "overarching duty to advocate the defendant's cause." Strickland v. Washington, 466 U.S. at 688. Counsel, however, does not a duty to raise a futile argument. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999)

("counsel's performance was not deficient if he declined to pursue a futile tactic"); see, e.g., Knight v. Spencer, 447 F.3d at 16 ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that" were nonexistent). In fact, avoiding a futile argument constitutes efficient rather than deficient performance. See U.S. v. Carr, 373 F.3d 1350, 1354 (D.C.Cir. 2004). Here, as in Bucci v. U.S., 662 F.3d 18 (1st Cir. 2011), "competent counsel could have knowingly and reasonably declined to raise the" argument "because doing so would be a waste of the defense's time, energy, and resources." Id. at 31.

In short, petitioner fails to show deficient performance. In light of the absence of deficient performance, it is not necessary to address the prejudice prong.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[12] that the motion to dismiss (Docket Entry # 16) be **ALLOWED** and that the petition be dismissed with prejudice.


      /s/ Marianne B. Bowler

-------------------------------------------

[12] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

**MARIANNE B. BOWLER**
United States Magistrate Judge